# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**U.S. COMMODITY FUTURES
TRADING COMMISSION,**

        **Plaintiff,**

**v.**                                            **Case No: 6:18-cv-1607-Orl-31GJK**

**RONALD MONTANO, MONTANO
ENTERPRISES, LLC & MICHAEL
WRIGHT,**

        **Defendants.**

---

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM OF LAW AND STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT AGAINST DEFENDANT RONALD MONTANO (Doc. No. 90)** |
| **FILED:** | **November 21, 2019** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

| | |
|---|---|
| **MOTION:** | **DEFENDANT RONALD MONTANO'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 92)** |
| **FILED:** | **November 21, 2019** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

1

# PROCEDURAL HISTORY

On September 27, 2018, Plaintiff Commodity Futures Trading Commission (the "CFTC") filed a Complaint against Defendants Ronald Montano, Montano Enterprises, LLC ("Enterprises"), and Michael Wright, alleging numerous violations of the Commodity Exchange Act and its accompanying regulations.[1] Doc. No. 1. The CFTC states in the Complaint that "Montano is the Managing Member and sole employee of . . . Enterprises. During the relevant period, Montano directed, controlled and/or had the authority to control, the acts and practices of . . . Enterprises." *Id.* at ¶ 17. The CFTC alleges the following claims against Montano and Enterprises.

*Count One:*   Violation of Section 4c(b) of the Commodity Exchange Act (the "Act"), 7 U.S.C. § 6c(b) (2012), and Regulation 32.4, 17 C.F.R. § 32.4 (2018) Options Fraud

*Count Two*:   Violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012) Commodity Trading Adviser ("CTA") Fraud

*Count Three:*   Violation of Regulation 4.41(a)(1)-(3), (b)(1)-(2), 17 C.F.R. § 4.41(a)(1), (2), (3), (b)(1), (2) (2018) Fraudulent Advertising; and

*Count Four:*   Section 6(c)(1) of the Act, 7 U.S.C. § 9(*1*) (2012) and Regulation 180.1(a)(1)-(3) (2018) Manipulative & Deceptive Device, Scheme or Artifice. *Id.* at 33-41.

The CFTC alleges that Montano's acts and omissions "occurred within the scope of his employment, office, or agency with . . . Enterprises[,]" and therefore Enterprises is liable for Montano's acts. *Id.* at ¶¶ 121, 130, 143, 155.

---

[1] On November 21, 2019, the CFTC announced a settlement in principle with Wright, Doc. No. 89, and on November 26, 2019, the claims against him were dismissed without prejudice, Doc. No. 93.

On September 27, 2018, Enterprises was served with the summons and Complaint. Doc. No. 7. On November 8, 2018, Montano filed his Answer and Affirmative Defenses, Doc. No. 24, and on November 29, 2018, Montano filed an Amended Answer and Affirmative Defenses. Doc. No. 37. On November 19, 2019, the CFTC moved for entry of a clerk's default against Enterprises. Doc. No. 31. On December 10, 2018, the Clerk entered the default. Doc. No. 39. On February 1, 2019, the Court denied the CFTC's motion to strike provisions from Montano's Amended Answer and Affirmative Defenses. Doc. No. 46.

Montano asserts eight numbered affirmative defenses, though some are overlapping or redundant. Doc. No. 37 at 14-17:

*First:* that the Complaint fails to state a claim upon which relief can be granted because "not all binary options are securities, futures, or commodity options." *Id.* at 14.

*Second:* lack of subject matter jurisdiction because the claims involved relate to brokers who do not reside in the United States, and the CFTC lacks jurisdiction to regulate them. *Id.* Montano also alleges that "binary options are not necessarily securities, futures, or commodity options . . . ." *Id.*

*Third:* that the CFTC does not have statutory authority to regulate the actions alleged in the Complaint because "binary options are not necessarily securities, futures, or commodity options" and the harm "was caused by international actors . . . ." *Id.* at 15.

*Fourth:* that the harm was caused by third party brokers that Montano had no contact with and could not control. *Id.*

*Fifth:* repeating this allegation and adding that the harm was caused by consumers' reliance on the third-party brokers' statements. *Id.* at 15-16.

3

*Sixth:* again, stating consumers relied on third party brokers' statements, and therefore Montano's statements were not material. *Id.* at 16.

*Seventh:* that the CFTC fails to allege specific statements consumers relied on that were fraudulent or false. *Id.*

*Eighth:* that the CFTC's claims are barred by "res judicata due to the judgment in the case of Federal Trade Commission v. Montano, et al., 6:17-cv-2203-Orl-28KRS, District Court for the Middle District of Florida." *Id.* at 16-17. Montano asserts that the damages in that case overlap with the damages alleged here. *Id.* at 17.

On May 16, 2019, the CFTC moved for entry of a default judgment against Enterprises. Doc. No. 72. On May 21, 2019, Enterprises moved to set aside the Clerk's default. Doc. No. 74. On July 15, 2019, the Court denied both motions. Doc. No. 79.

On July 17, 2019, the Court denied Montano's motion for judgment on the pleadings. Doc. No. 80. This ruling rejected Montano's argument that the Complaint is a shotgun pleading, finding that "the headings and content of each count are more than sufficient to put Montano on notice of the claims against him." *Id.* at 4. The Court also rejected Montano's argument that the fraud claims were not pleaded with sufficient particularity. *Id.* Regarding Montano's contention that the CFTC cannot state claims against an advertiser, the Court distinguished *Commodity Futures Trading Commission v. Mass Media Marketing, Inc.*, 297 F.3d 1321, 1322 (11th Cir. 2002), noting that it did not apply to the Act and advertising fraud claims because violations of the Act do not require that the violations occur in connection with an offer, the entry of, or confirmation of a commodity transaction. Doc. No. 80 at 5. The Court also distinguished *Mass Media* on the grounds that in *Mass Media* the defendants ran general advertisements and would sell prospective customers' contact information to brokers, whereas "[h]ere, Montano offered automated commodity interest

4

Trading Systems. Montano allegedly targeted particular email addresses with his solicitations, and follow-up emails were sent when prospective customers failed to open a trading account. Montano was paid when customers he solicited opened and funded an account using the Trading Systems." *Id.* The Court rejected Montano's argument that the CFTC failed to adequately plead options fraud, stating, "Montano's fraudulent solicitations in connection with the offer of trading systems, which automatically traded on behalf of customers, along with the other allegations in Count I of the Complaint, are sufficient to state a claim for Options Fraud." *Id.* at 5-6. Montano was also not entitled to judgment on the pleadings as to Counts II and III regarding Montano as a commodity trading advisor ("CTA") because "the Complaint alleges that Montano made and distributed campaign solicitations advising customers on the value and advisability of trading in binary options and using the Trading Systems with recommended brokers, and that he was compensated for doing so." *Id.* at 6. This falls under the Act's definition of a CTA as "any person who, for compensation or profit, and engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in [contract of sale of a commodity for future delivery, security futures product, or swap]." 7 U.S.C. § 1a(12)(A); Doc. No. 80 at 6. Finally, the Court rejected Montano's argument that the Act's prohibitions on swaps fraud do not apply to him because he did not engage in market manipulation, as "[t]he CFTC need not allege that Montano manipulated the market in order to state a claim for swaps fraud . . . ." Doc. No. 80  at 7.

On November 21, 2019, the parties filed their competing motions for summary judgment. Doc. Nos. 90, 91. On December 23, 2019, they filed their responses to the opposing parties' motions. Doc. Nos. 97, 98. On January 6, 2020, they filed their replies to the responses. Doc. Nos. 99, 100. On April 23, 2020, the motions were referred to the undersigned.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Liberty Lobby, Inc.,* 477 U.S. at 257; *see* Fed. R. Civ. P. 56(c). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). In resolving a summary judgment motion, the Court must view the record evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## OVERVIEW OF MOTIONS

The CFTC moves for summary judgment (the "CFTC Motion"), asking that the Court "enter Final Judgment against Ronald Montano, permanently enjoin him from engaging in further violations of the Act and Regulations, and impose the requested equitable and monetary relief in the form of trading and registration bans, disgorgement, and a [civil monetary penalty]." Doc. No. 90 at 45. The CFTC contends that Montano committed the following types of fraud in violation of the Act and Regulations: "fraud by a CTA; advertising fraud; and fraud in connection with options and swaps." *Id.* at 22. The CFTC has the burden of proving the following: "(1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3)

6

materiality." *Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002). Subsumed (if not buried) in CFTC's motion are separate arguments for summary judgment on each of Montano's Affirmative Defenses.

Montano's motion seeks a judgment of dismissal, arguing principally that the laws and regulations are unconstitutionally vague (under the Fifth Amendment) as applied to his activities and that his conduct is shielded from regulation under the First Amendment. He also asserts various other legal grounds to avoid liability: absence of "transactions"; he is not a "Commodities Trading Advisor"; there was no market manipulation; CFTC has failed to proffer required expert testimony; and the rule of lenity excuses his conduct. Finally, Montano raises various other matters in an apparent effort to obtain what he calls a partial summary judgment.

In broad strokes, what the parties are seeking is as follows. The CFTC, without trial, wants a final award of specified damages and a wide-ranging permanent injunction based on rather ill-defined and uncertain activities of Montano and third parties. What the CFTC wants would require extensive and detailed fact-finding with respect to the range and scope of Montano's activities (including his state of mind) and their effects in a complicated and diverse trading environment. In so doing, the CFTC heavily relies on Montano's refusal to answer questions (under a claim of Fifth Amendment privilege) and his failures to provide discovery. What the CFTC consistently fails to recognize is that any evidentiary inferences or exclusions that may result from Montano's litigation tactics are permissive and not compulsory for summary judgment or trial purposes. Further, the CFTC ignores the difficulties in fashioning any final relief given the numerous and complex activities involved. Finally, the limitations on equitable relief recently explicated by the Supreme Court in *LIU v. SEC,* 591 U.S. ___ (2020) make it impossible to fashion a propped final judgment on this record.

7

Montano, for his part, despite his refusals to answer material questions and provide other discovery in this civil litigation, seeks dismissal of all claims against him. In so doing, Montano essentially ignores the adverse inferences that may be drawn by the finder of fact with respect to his conduct. Montano's vagueness and free speech arguments are virtually frivolous, particularly in a summary judgment context, and his additional technical positions are unavailing.

Inherently[2], this is a complex case. The pending motions and supporting arguments disregard the necessary implications of such complications in the context of summary judgment practice. It is only a slight exaggeration to note that CFTC seems to believe that Montano's invocation of the Fifth Amendment and his other non-cooperation in this litigation suffice to establish, beyond consideration of other evidence and arguments, all the elements of liability and damages and to compel granting legal and equitable relief. But, as to this Defendant, the case is not proceeding as if on default. Rather, at this stage of the litigation and as to CFTC's motion all inferences are to be taken in Montano's favor.

Montano, despite assertion of a number of fanciful and non-responsive arguments, consistently ignores the potential findings and conclusions that are available to be drawn from the evidence of record and particularly the permissible (though not compelled) inferences that arise from his litigation strategy with respect to the Fifth Amendment and document production. He also disregards a number of the Court's prior rulings against him, which are in this Court the law of the case.

---

[2] The laws and regulations administered and enforced by the CFTC are, by necessity, complex and technical. The markets and trading activities under its jurisdiction inevitably attract those who would prey on the gullibility and unsophistication of others. Attempting to police these activities in the face of determined and imaginative malfeasors requires detailed, broad and technical regulations. Montano, for his part, regardless of what may be determined as to the legality of his conduct, has striven to obscure his role in the activities at issue seemingly to exploit the arcane interstices of the regulatory system. These circumstances readily produce a complicated case.

The blinkered approach of both sides with respect to the material issues and the dictates of Rule 56 jurisprudence leaves the Court with an unsatisfactory summary judgment record and dictates denial of the majority of both motions. There are some legal issues identified and argued that will need to be resolved. These motions, however, are not useful in reaching their resolution. To the extent these issues involve evidentiary issues, a motion in limine may be appropriate. To the extent there are legal issues not already ruled upon, trial briefs and jury instructions are better suited to frame the issues for final determination.

# LEGAL ANALYSIS

## I.    MONTANO'S ARGUMENTS

Montano's scattershot approach in raising legal issues and dealing with the record (which, of course, includes his refusal to answer questions and provide other discovery) does not facilitate analysis and disposition of his issues. To assist in the District Judge's review, this Report starts with a discussion of the broader legal points raised by Montano, followed by a count-by-count analysis of the CFTC's claims for purposes of his pending motion. The Report will then discuss the CFTC's motion.

### A.   CFTC JURISDICTION

Montano argues that the CFTC lacks jurisdiction in this case because it is pursuing the same relief for the same transactions as the Securities and Exchange Commission in the companion case S.E.C. v. Montano, et al., No. 6:16-cv-1606-31GJK. Doc. No. 92 at 26. Montano argues that binary options do not fall under the jurisdiction set forth in 7 U.S.C. § 2(a)(1)(A), which provides CFTC jurisdiction over transactions involving swaps or contracts of a sale of a commodity for future delivery, which Montano argues binary options are not. *Id.* Instead, Montano argues, the

CFTC's ability to recover is limited to transactions in which commodities are implicated, and none have been identified in evidence here. *Id.*

In response, the CFTC argues that binary options fall within the scope of the Act and Regulations. Doc. No. 97 at 8-9. Under 7 U.S.C. § 2(a)(1)(A), the CFTC has exclusive jurisdiction

> with respect to accounts, *agreements (including any transaction which is of the character of, or is commonly known to the trade as, an "option", . . .* ), and transactions involving swaps or contracts of sale of a commodity for future delivery . . . , traded or executed on a contract market designated pursuant to section 7 of this title or a swap execution facility pursuant to section 7b-3 of this title or any other board of trade, exchange, or market, and transactions subject to regulation by the Commission pursuant to section 23 of this title.

(Emphasis added.) In *CFTC v. Atkinson*, No. 18-23992-CIV, 2019 WL 2125026, at *1 (S.D. Fla. Feb. 4, 2019), the defendants argued that "binary options at issue are not regulated assets within . . . the CFTC's jurisdiction." The court rejected this argument. *Id.* The "[d]efendants . . . offered free access to their automated trading system upon the filing of a new trading account with a recommended broker." *Id.* The CFTC had jurisdiction because "[t]hose who provide access to trading systems can be commodity trading advisors ('CTAs'), and the alleged fraud here is 'in connection with' commodity trading that is governed by the Commodities Exchange Act." *Id.*

Here, Montano himself testified before the investigative panel that he would send emails out with links to websites that contained videos "talking about binary options and . . . making money in binary options." Doc. No. 92-2 at 6-7. Montano made money when FTDs from people that he solicited were used to create accounts touted as making money from binary options. *Id.* at 11. Thus, there is a reasonable inference that Montano provided access to trading systems in connection with commodity trading governed by the Act.

In his Reply, Montano asserts that there are no commodities, and the CFTC has no proof that binary options existed or that trading systems would have allowed access to them. Doc. No.

100 at 2. Montano provides no authority interpreting CFTC jurisdiction as requiring actual existence of binary options when the conduct at issue is the allegedly fraudulent representation of outrageous profits from dealing in binary options. In addition, his testimony before the investigative panel is that he touted trading systems that allowed access to binary options and he got paid when those he solicited opened accounts to trade in binary options. Doc. No. 92-2 at 6-7, 11. He is in no position now to contend the absence of the very object he promoted. **It is therefore recommended that the Court reject this argument.**

### B.  FIFTH AMENDMENT DUE PROCESS: VAGUENESS

Montano argues, essentially without citation to any authority, that the laws and regulations being enforced by the CFTC are unconstitutionally vague as applied to hm and that he did not have fair notice that his conduct was proscribed. Ironically, his assertions are themselves vague with no real identification of matters as which he could not understand the rules governing his conduct. Montano also disregards evidence of his structuring his activities to obscure their nature and his destruction of documents, both which suggest his keen awareness of the bounds of legal conduct.

Statutes and regulations must comport with due process by giving a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982); *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310-11 (11th Cir. 2009). A law is not impermissibly vague "if a reasonable person … would have known that [his] conduct was at risk." *United States v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 987 (7th Cir. 1999).

Montano provides no case law to suggest that the requirements being enforced here by the CFTC are improperly vague. Further, he makes no real argument that application of those requirements to him somehow impermissibly left him in doubt as to whether his activities were

subject to regulation and enforcement actions. **His Fifth Amendment arguments should be summarily dismissed.**

### C.    FIRST AMENDMENT: FREE SPEECH

Montano argues that the laws the CFTC is suing under violate his rights under the First Amendment. Doc. No. 92 at 8; Doc. No. 98 at 15. He contends that the speech he is being punished for making is protected commercial-related speech. Doc. No. 98 at 16.

The CFTC's claims against Montano are rooted in its theory that the materials Montano created were fraudulent. There is evidence that the stories portrayed in the videos were fictional and that the testimonials were portrayed by actors. Doc. No. 92-2 at 8. Montano knew that the videos he paid others to create "were based on trading results and profits and losses that were not related to real people's trading results from a product [he was] promoting[.]" *Id.* at 9, 10.

Montano's First Amendment argument is unavailing to the point of near frivolity. "[T]he First Amendment does not shield fraud." *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003). Moreover, in *Commodity Trend Service, Inc. v. CFTC*, 233 F.3d 981, 993-94 (7th Cir. 2000), the Seventh Circuit held that § 6*o*(1) and Regulation 4.41(a), upon which Counts II and III are based, do not violate the First Amendment. "Section 6*o*(1)(A) and Regulation 4.41(a)(1) require scienter and do no more than prohibit common law fraud in commodities transactions. Explicit antifraud measures such as these do not violate the First Amendment." *Id.* at 993. The Seventh Circuit found that § 6*o*(1)(B) and Regulation 4.41(a)(2) are limited in scope, "prohibit[] only certain activities that deceive or defraud a CTA's customers," and require negligence. *Id.* The regulation is constitutional because it only applies to commercial speech, and "[t]he government can directly regulate deceptive advertising without any further justification." *Id.* at 994. Section § 6*o*(1)(B) is narrowly tailored because it "targets only a certain group of

deceptive activities and requires negligence." *Id.* The subsection "is directly related to preventing fraud in statements that purport to convey factual information[,]" because it "punishes only a limited group of activities that deceive or defraud a CTA's customers or potential customers." *Id.* **The First Amendment arguments are meritless and should be rejected.**

### D.  LACK OF EXPERT TESTIMONY

Montano argues that he is entitled to summary judgment because the CFTC has not submitted expert testimony on a myriad of issues. Doc. No. 92 at 23. The crux of Montano's argument is that because there is no proof that binary options existed or that trading systems would have allowed access to them, expert testimony is necessary. Doc. No. 98 at 9; Doc. No. 100 at 2-3. Montano cannot demonstrate that he is entitled to judgment as a matter of law because there is no expert testimony regarding these issues, however, when he testified that he was promoting trading in binary options and he got paid when those he solicited opening accounts to trade in binary options. Doc. No. 92-2 at 6-7, 11.

The other issues that Montano argues require expert testimony revolve around whether the emails and videos were fraudulent or attempted to deceive. Doc. No. 92 at 23. As the CFTC points out, Montano admitted that the videos depicted fictitious characters and false results. Doc. No. 97 at 16 n.39; Doc. No. 92-2 at 8-9. A reasonable inference could therefore be drawn, without the aid of expert testimony, that the emails and videos were fraudulent or attempted to deceive.

Montano also argues that expert testimony is needed regarding evidence that the trading software did not lead to results for the vast majority or large number of consumers or that people did not profit. Doc. No. 92 at 23. Montano does not explain why expert testimony would be needed to determine whether people made or lost money in the trading systems that he promoted.

**Thus, Montano fails to demonstrate that he is entitled to judgment as a matter of law on these issues due to a lack of expert testimony.**

### E.  RULE OF LENITY

Montano argues that "the rule of lenity should easily trump any deference the CFTC would claim for its interpretations of these questionable statutory applications." Doc. No. 92 at 24. Assuming without deciding that the rule of lenity applies in this civil case, it only applies where "'there is a grievous ambiguity or uncertainty.'" *United States v. Cingari*, 952 F.3d 1301, 1311 (11th Cir. 2020) (quoting *Holloway v. United States*, 526 U.S. 1, 12 n.14 (1999) (punctuation and citation omitted)). In making his rule of lenity argument, Montano fails to identify any grievous ambiguity or uncertainty in the applicable statutes. Doc. No. 92 at 24. The only time he mentions a statute in making this argument is when he states that "the CFTC presented civil causes of action that could have criminal consequences per 7 U.S.C. § 13(a)." Doc. No. 92 at 24. He does not specify the ambiguities that exist or how they should be interpreted in his favor. *Id.* The Court will not make Montano's arguments for him.[3] **Thus, it is recommended that the Court reject this argument.**

### F. RELIANCE

Montano argues that the CFTC must show that consumers relied on the videos he created and that such reliance is attributable to their losses. Doc. No. 92 at 28. Reliance is not a required element for the CFTC to establish liability under 7 U.S.C. § 9 and 17 C.F.R. § 180.1, which the CFTC alleges Montano violated in Count Four, Doc. No. 1 at 38-41. *CFTC v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1325 (11th Cir. 2018), *cert. denied sub nom. S. Tr. Metals, Inc. v. CFTC*, 139 S. Ct. 1464 (2019). Montano provides no authority supporting his proposition that reliance is a

---

[3] *See Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) ("judges are not like pigs, hunting for truffles buried in briefs" (quoting *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)).

required element for Counts One, Two, and Three, as the only case he cites, *Indosuez Carr Futures, Inc. v. CFTC*, 27 F.3d 1260, 1261-62 (7th Cir. 1994), Doc. No. 92 at 28, was not a CFTC enforcement case, but one in which the CFTC awarded reparations to an investor. In *Indosuez Carr Futures*, the Seventh Circuit stated that it was the *investor* that must show reliance. 27 F.3d at 1264. This action is one for enforcement brought by the CFTC, making it distinguishable from *Indosuez Carr Futures*. Additionally, in his response to the CFTC Motion, Montano admits, "The CFTC is correct that reliance is not an element of any claim made." Doc. No. 98 at 18. **It is therefore recommended that the Court reject Montano's reliance argument.**

### G.  LARRY'S CASH MACHINE CAMPAIGN

Montano argues that he is entitled to summary judgment on claims related to the Larry's Cash Machine campaign because it was not his campaign and he was not responsible for it. Doc. No. 92 at 28. Montano cites to his testimony before the investigative panel that the Larry's Cash Machine campaign was a binary project that used his name, but he was not involved in the production of the video and did not contribute any money towards the video or the script. *Id.*; Doc. No. 92-2 at 13-14. Within that same testimony, however, Montano states that he briefly reviewed the video before it was emailed, and he had access to the advertiser account for Larry's Cash Machine and was able to provide updates to the leaderboards. Doc. No. 97-1 at 11; Doc. No. 90-2 at 189. He also testified that the email promoting Larry's Cash Machine came from either him or his colleague, Travis Stephenson. Doc. No. 97-1 at 12. Montano's testimony alone creates genuine issues of material fact as to whether his involvement in the Larry's Cash Machine campaign was sufficient to make him responsible for its misdeeds.

### H.  RULE 8, F.R. CIV. PRO.

Montano repeats his argument from his motion for judgment on the pleadings that the Complaint violates Federal Rule of Civil Procedure 8 because the counts incorporate all previous counts and the CFTC failed to specify appropriate facts. Doc. No. 92 at 25. This argument is rejected for the reasons set forth in the Order denying the motion for judgment on the pleadings. Doc. No. 80 at 4.

## I. INDIVIDUAL COUNTS

### *Count One: Options Fraud*

Other than the points in avoidance addressed above, Montano argues that solicitors and marketers cannot be held liable for options fraud unless they personally participated in the trading accounts. This, in essence, is a rehash of arguments this Court has already rejected in denying his Motion for Judgment on the Pleadings: "Montano's fraudulent solicitations in connection with the offer of trading systems, which automatically traded on behalf of customers, along with the other allegations in Count I of the Complaint, are sufficient to state a claim for Options Fraud." Doc. No. 80 at 6. The only 11th Circuit case[4] cited by Montano, *CFTC v. Mass Media Marketing,* 297 F.3d 1321 (11th Cir. 2002), was expressly distinguished in that Order as the Court rejected Montano's argument.

> *Mass Media* "does not apply to the CTA and advertising fraud claims because there is no requirement that such violations occur 'in connection with' an offer, the entry of, or confirmation of a commodity transaction." Doc. 76 at 18.

> Also, in that case, the actions of the advertisers "never involved the making of an offer to enter into a commodity transaction or assisting customers in carrying out such transactions." *Id.* at 1326. Instead, the defendants simply ran general advertisements, and if prospective customers responded, the defendants would sell their contact information to brokers. Here, Montano offered automated commodity interest Trading Systems. Montano allegedly targeted particular email addresses with his solicitations, and follow-up emails were sent when prospective

---

[4] Montano also cites a Ninth Circuit case, *CFTC v. White Pine Trust Corp.,* 574 F.3d 1219 (9th Cir. 2009). However, that case involved solicitations for funding general trading accounts and is markedly different from Montano's activity here, which promoted systems expressly designed for automatic trading in binary options.

> customers failed to open a trading account. Montano was paid when customers he
> solicited opened and funded an account using the Trading Systems.

*Id.* at 5.

Montano has presented no controlling or persuasive grounds for summary judgment on
Count One (Options Fraud). His motion should be **DENIED** as to that Count to allow final
adjudication by the finders of fact.

> *Count Two: Commodities Trading Advisor Fraud*

As to this Count as well, Montano reprises arguments already rejected by the Court in this
litigation, namely that he did not act as a Commodity Trading Advisor. The Court's conclusion
rejecting this contention at the pleadings stage still applies.

> Montano made and distributed campaign solicitations advising customers on the
> value and advisability of trading in binary options and using the Trading Systems
> with recommended brokers, and that he was compensated for doing so. . . . The
> Act's definition of a Commodity Trading Advisor includes "any person who, for
> compensation or profit, and engages in the business of advising others, either
> directly or through publications, writings, or electronic media, as to the value of or
> the advisability of trading in [contract of sale of a commodity for future delivery,
> security futures product, or swap]." 7 U.S.C. § 1a(12)(A).

Doc. No. 80 at 6.

CFTC's allegations, sufficient as to the pleadings, are amply supported in the record, taking
all inferences in its favor (as must be done for purposes of Montano's motion). Doc. No. 92-2 at
6-7, 11; Doc. No. 90 at 8; Doc. No. 90-4 at ¶ 4; Doc. No. 72-7 at ¶ 15.

Montano also argues that he is entitled to an exception or exemption from CTA registration
requirements. This argument simply ignores that even CTAs exempt from registration may be held
liable for fraud. 17 C.F.R. § 4.41(c)(2) (the fraud and testimonial provisions apply "[r]egardless of
whether the commodity pool operator or commodity trading advisor is exempt from registration
under the Act."). **The motion should be DENIED as to Count Two.**

*Count Three Advertising Fraud*

Montano makes no additional arguments here. **The discussion set forth above as to his overarching and CTA contentions suffices to compel denial of his motion on this Count.**

*Count Four: Swaps Fraud*

Montano's principal specific argument here is that the CFTC must allege and prove market manipulation. Not only has the Court already rejected this position (Doc. No. 80 at 7), but the only case in support cited by Montano has been reversed on appeal. *CFTC v. Monex Credit Co.,* 931 F.3d 966 (9th Cir. 2019). **As to Count Four, Montano has not shown entitlement to summary judgment.**

### J. PARTIAL SUMMARY JUDGMENT

In support of a request for partial summary judgment, Montano argues, without any citation to authority, that the CFTC must be able to show personal knowledge of a transaction or of a commodity attached to the transaction. Doc. No. 92 at 27-28. The CFTC responds that actual transactions are not necessary, and relies on *CFTC v. Brockbank*, No. 2:00-CV-622 TS, 2006 WL 223835, at *3 (D. Utah Jan. 30, 2006). Doc. No. 97 at 9. In *Brockbank*, the defendants argued, among other things, "that the CFTC does not have jurisdiction over them unless . . . commodities were actually traded on [the] account . . . ." *Brockbank*, No. 2:00-CV-622 TS, 2006 WL 223835, at *1. The CFTC did not need to allege actual trades on the account "to state a valid claim for civil penalties." *Id.* at *3. The court reasoned that requiring actual trades would encourage total fraud, as diverting all of the funds the defendants received from actual trades would excuse liability. *Id.* The same reasoning applies here, where Montano is alleged to have used false representations to lure people into funding accounts to trade binary options. Montano fails to demonstrate that he is entitled to judgment as a matter of law on transactions that the CFTC does not prove with personal

knowledge or of a commodity attached to it. Thus, his alternative request for some sort of partial summary judgment should be **DENIED.**

## II.     CFTC MOTION FOR SUMMARY JUDGMENT

### A.     COMPLEX MULTI-FACETED CASE

CFTC has amassed a substantial record that *could* support inferences for the findings and conclusions necessary for the judgment it seeks. However, on its motion for summary judgement, those inferences, including especially those arising from Montano's refusal to answer questions and provide discovery, must be viewed most favorably to Montano. Montano has admitted a great deal, and he concedes that many of the facts are uncontested. Nonetheless, this is a case involving numerous complex transactions with multiple participants, uncertain states of mind, issues of causation, damages and scope of equitable relief. In such cases, inferences are controlling and best left for the finders of fact. *Kennedy v. Silas Mason Co.,* 334 U.S. 249, 256–57 (1948) ("[S]ummary procedures, however salutary where issues are clear-cut and simple, present a treacherous record for deciding issues of far-flung import, on which this Court should draw inferences with caution from complicated courses of legislation, contracting and practice." (footnote omitted)); *Bradbury v. Wainwright,* 718 F.2d 1538, 1546 (11th Cir. 1983) (complexity, new applications of legal principles, and potential impact are relevant considerations in using summary procedures with caution).

This is not the rare case where a plaintiff with the burden of proof and persuasion can prevail at summary judgment. By its own account of events, CFTC concedes that this case involves dozens of different marketing campaigns as to which Montano's role varied and as to which he had varying other participants, acting in numerous capacities. The methods, objectives, and

19

revenue sharing details of these campaigns, as detailed in the hundreds of pages of the record submitted by the CFTC, while having some elements in common, differ substantially. The CFTC has identified and cited to numerous actions and statements by Montano that tend to show misrepresentations and fraudulent omissions. That evidence, however, is at least in part, subject to other inferences as to Montano's culpability (especially vis-à-vis others), whether every campaign operated in violation of legal requirements, and the extent to which Montano profited from the operation. The broad brush used by the CFTC to sweep all these matters into a final judgment is self-defeating for purposes of it seeking a summary judgment.

**B.      MONTANO'S INVOCATION OF 5th AMENDMENT PRIVILEGE**

The CFTC relies heavily on Montano's invocation of his Fifth Amendment privilege against self-incrimination and his failures to respond to other discovery to provide evidentiary inferences in support of the overall relief it seeks. Plainly, in civil litigation, when a party invokes the Fifth Amendment's privilege against self-incrimination or fails to provide discovery (or even destroys relevant evidence), inferences adverse to that person are permissible. *Baxter v. Palmigiano,* 425 U.S. 308 (1976).

These are only permissible inferences, however. It is axiomatic that in considering a summary judgment motion, the Court must draw all inferences against the moving party. This fundamental principle defeats the CFTC's motion at this stage, no matter how strong its position may be at trial.

**C.      AFFIRMATIVE DEFENSES**

The CFTC moves for summary judgment on all of Montano's affirmative defenses. Doc. No. 90 at 34-36 and ¶¶ 65, 67; Doc. No. 99 at 9.

*1.      FIRST, SECOND AND THIRD AFFIRMATIVE DEFENSES*

20

The CFTC moves for summary judgment on Montano's First, Second, and Third Affirmative Defenses. Doc. No. 90 at 34-35. These three affirmative defenses rely on the argument that binary options are not products subject to the CFTC's regulation and that the claims involve international actors, such as brokers that do not reside in the United States. Doc. No. 37 at 14-15.

As discussed above regarding the CFTC's jurisdiction, binary options are subject to the CFTC's regulation. *CFTC v. Atkinson*, No. 18-23992-CIV, 2019 WL 2125026, at *1 (S.D. Fla. Feb. 4, 2019). Regarding the alleged defense that the campaigns involved international actors, the actions of those have no bearing on whether *Montano's* actions fall under the CFTC's jurisdiction and violated the Act. **It is therefore recommended that the Court grant summary judgment in favor of the CFTC on Montano's First, Second, and Third Affirmative Defenses.**

### 2.   *SECOND THROUGH SEVENTH AFFIRMATIVE DEFENSES*

The CFTC moves for summary judgment on Montano's Second through Seventh Affirmative defenses, arguing that they rely on the premise that it must establish reliance or that Montano is not liable if others also committed fraud. Doc. No. 90 at 35-36. Rather than addressing these arguments, Montano's response relates to the remedies the CFTC is pursing. Doc. No. 98 at 18-19. In this section, Montano admits, "The CFTC is correct that reliance is not an element of any claim made." *Id.* at 18. As discussed above, other's actions do not negate Montano's liability under the Act. **The CFTC demonstrates that there are no genuine issues of material fact and it is entitled to judgment as a matter of law on Montano's Second through Seventh Affirmative Defenses.**

### 3.   *EIGHTH AFFIRMATIVE DEFENSE: RES JUDICATA*

The CFTC argues that it is entitled to summary judgment on Montano's Eighth Affirmative Defense, which is res judicata.  Doc. No. 90 at 36-38. In the Answer, Montano relies on the case

*FTC v. Montano*, No. 6:17-cv-2203-28KRS, stating that the damages in that case overlap with the damages in this case. Doc. No. 37 at 16-17. The CFTC argues that Montano cannot establish the elements of res judicata, as it is not the same party as the FTC, the FTC did not include charges of violations of the Act and its regulations, and the FTC action involved violations of business segments other than binary options. *Id.*, and ¶¶ 69, 72-75. As Montano did not respond to this argument, it is deemed conceded. "When a non-moving party fails to address particular claims in the moving party's motion for summary judgment but responds to other arguments, the non-moving party abandons these claims." *Johns v. CSX Transp., Inc.*, 210 F. Supp. 3d 1357, 1373 (M.D. Ga. 2016**). It is therefore recommended that the Court find that CFTC is entitled to summary judgment on Montano's Eighth Affirmative Defense.**

## III.   REMEDIES

Montano argues that, if the Court grants the CFTC Motion in whole or in part, then he is entitled to partial summary judgment as to his liability for penalties, restitution, or disgorgement. Doc. No. 92 at 28-29. As it is recommended that the CFTC Motion be denied as to Montano's liability, this argument is moot. The undersigned notes, however, that the CFTC has yet to point to any evidence of losses by alleged victims of the schemes. In response to the Montano Motion, the CFTC asserts that "it has produced direct evidence of victims' losses that it will present at trial." Doc. No. 97 at 20. To support this statement, and the statement that it "has identified numerous victims who suffered losses due to Montano's fraud in its disclosures and documents produced that support its restitution request, which will be presented at trial or a hearing on remedies[,]" the CFTC cites to a declaration of one of its attorneys and its Rule 26(a) Disclosures. *Id.* at 20 n.49. The declaration merely states that documents were produced to Montano containing

customer names, their registration or first deposit date, account balance, and deposit amount or profits and losses for eight of the binary options campaigns discussed in the Complaint. Doc. No. 97-2 at ¶ 9. The CFTC's Rule 26 disclosures list ten customers, and for each states that they have knowledge of investments and losses as a result of the fraudulent solicitations. Doc. No. 78-3. The absence of identified specific victims in the pleadings and briefs and the specific provable losses of the alleged victims undercuts any suggestion that this case is suitable for summary treatment.

In addition, as noted above, recently refined considerations as to equitable remedies available in enforcement proceedings preclude final adjudication on a summary record of whatever relief may ultimately be appropriate against Montano. *See Liu v. SEC,* 591 U.S. ___ (2020).

## IV.   DERIVATIVE LIABILITY AS CONTROL PERSON

The CFTC argues that Enterprises is liable for Montano's actions because Montano is the sole owner and operator of Enterprises and violated the Act and Regulations while acting on its behalf. Doc. No. 90 at 38. It also argues that Montano is personally liable for Enterprises' actions because, under 7 U.S.C. § 13c(b), a person that directly or indirectly controls any person who violated the Act or Regulations may be liable for the violation to the same extent as the controlled person. *Id.* The CFTC states that Montano was the sole principal and employee of Enterprises, the only signatory on its accounts, and acted individually and on behalf of Enterprises in carrying out binary options fraud. *Id.* at 39. As Montano did not respond to this argument, it is considered conceded. *Johns v. CSX Transp., Inc.*, 210 F. Supp. 3d 1357, 1373 (M.D. Ga. 2016). **Therefore, it is recommended that the Court find that there is no genuine issue of material fact and the CFTC is entitled to a ruling as a matter of law that Enterprises is liable for Montano's actions and Montano is liable for Enterprises' actions.**

# CONCLUSION

The parties, in their contrary fashions, have invoked the summary judgment procedures of Rule 56, Fed. R. Civ. P., in a case almost wholly unsuited for such treatment. Whatever value these motions may have in illustrating the complexity of the case, legally and factually, they do little to simplify the issues for trial. Except as to Montano's affirmative defenses and his liability as a control person, the matters raised are not properly disposed of on summary judgment. The motions should be **DENIED** with those two exceptions, and, as to them, the Court should hold that Montano's affirmative defenses fail and that he has liability of a control person with respect to Enterprises. With those rulings, the case should go forward with the usual final pretrial and trial procedures.

## NOTICE TO PARTIES

**A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its filing waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.**

Recommended in Orlando, Florida, on July 14, 2020.

_David A. Baker_

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
.

24